# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JAMES ARTHUR WARD, JR., ) | |
| ) | |
| Plaintiff, ) | **MEMORANDUM OPINION,** |
| ) | **ORDER, AND RECOMMENDATION** |
| v. ) | |
| ) | 1:08CV675 |
| LIFE INSURANCE COMPANY ) | |
| OF NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

This case arises from a dispute between Plaintiff James Arthur Ward, Jr. ("Plaintiff" or "Ward") and Defendant Life Insurance Company of North America ("Defendant" or "LINA") concerning the denial of long-term disability benefits for Ward. This matter is presently before the court on cross-motions for summary judgment: Plaintiff's motion (docket no. 17) and Defendant's motion (docket no. 22). Both parties have filed responses to the motions, and the matter is ripe for disposition. For the reasons that follow, the court will deny both motions for summary judgment and remand the claim to the plan administrator for a full and fair review.[1]

## I. FACTS

Plaintiff was employed as a Quality Assurance Technician by Railroad Friction Products Corporation ("RFPC"), a subsidiary of Wabtec. He has a history of

---

[1] The parties have consented to the jurisdiction of the magistrate judge.

degenerative disc disease and underwent back surgery in October 2004.  On July 26, 2006, he injured his back while lifting at work.  He did not return to work after that date.  Plaintiff settled with his workers' compensation carrier for $60,000.  On February 21, 2007, he submitted a claim to LINA for long-term disability benefits.  (Ex. 4, 121).  In the claim, Plaintiff stated that he has a "small posterior left-sided disc protrusion at L5-S1" and that as a result of his injury he has "severe pain in [his] lower back radiating into [his] groin and hip." (*Id.*)

During his employment, Plaintiff was covered under the Wabtec Long-Term Disability Plan ("the Plan"), an employee benefit plan that provides certain benefits in the event of long-term disability.  The Plan is governed by ERISA.[2]  It is undisputed that the long-term disability plan consists of at least two documents: the Policy and the summary plan description ("SPD") of the Policy, which is distributed to employees pursuant to 29 U.S.C. § 1022.  There is also a third document in play here, the appointment of claim fiduciary ("ACF"), the relevance of which the parties dispute. LINA insures the Plan and has discretionary authority to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan.  Disability is defined under the Plan as follows:

> **Definition of Disability/Disabled**
> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1.   unable to perform the material duties of his or her Regular Occupation; and

---

[2] The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
> 2. unable to earn 60% or more of his or her Indexed Earnings.

(Pl.'s Ex. 1 at 295). In addition to satisfying the definition of disability under the Plan, an insured employee also "must satisfy the Elimination Period, be under the Appropriate Care of a Physician, and meet all the other terms and conditions of the Policy." Plaintiff, as a new claimant, contends that he is disabled under the first definition of "disabled." Under this definition, a claimant is entitled to benefits if he has a greater than 20% loss of earning capacity in his Regular Occupation.

In support of his claim for disability benefits, Plaintiff submitted medical records and statements from his doctors and employer. In a letter dated February 27, 2007, Dr. Bradford Faulkenberry, Plaintiff's family physician, noted that Plaintiff has "lumbar disk disease with chronic pain relating to this." (Ex. 4 at 129). Dr. Faulkenberry went on to state:

> I last saw Mr. Ward on February 19, 2007. Mr. Ward, of course, cannot do any lifting over 10 pounds. He should do no bending, kneeling, climbing, crawling or any sudden twisting or turning. Even the slightest awkward turn or twist could cause him to have severe back spasm which could basically incapacitate him. This, of course, is unpredictable and could happen with just the slightest awkward movement. On some days he might be able to sit for 30 minutes to an hour but other days sitting would be very uncomfortable for him and he

-3-

Case 1:08-cv-00675-WWD   Document 34   Filed 08/26/09   Page 3 of 14

> may not be able to sit at all, and the same could be said for standing or walking. As I had mentioned in my previous note, I think James is going to be pretty much incapacitated and in my opinion is permanently disabled from any type position and any type of factory position. Even considering a sedentary position, he's going to have a difficult time sitting for any length of time because he would at times need to l[ie] down or stretch or find some other position that would give him some relief from his back spasm and discomfort.
>
> In summary, Mr. James Ward has lumbar disk disease with chronic pain syndrome and in my opinion should be chronically disabled from any position in your plant or any other industrial type facility.

(*Id.*)

As part of its claim review, LINA's Associate Medical Director, a licensed physician, reviewed the medical records of Dr. Faulkenberry and Dr. Edwards, Plaintiff's back surgeon. The Associate Medical Director ("AMD") concluded that the "medical information on file does not support a Sedentary capacity (ie work restriction)." The AMD specifically noted that Dr. Edwards' notes indicate "chronic mechanical back pain with some radicular discomfort in the right buttocks and leg down to but not below the knee" and that Plaintiff's motor strength was "within normal limits." Ex. 4 at 95. The AMD further noted that Dr. Faulkenberry's report "did not provide documentation of motor, sensory, vascular or neurological deficits indicative of a durational loss precluding [Plaintiff's] light occupation." (*Id.*)

On July 12, 2007, Plaintiff filed an appeal of the initial denial of benefits. In support of his appeal, Plaintiff, through counsel, submitted additional documentation, including (I) a letter from Buffy Smith, the human resources manager at RFPC,

-4-

stating that "due to [Plaintiff's] orthopedic impairments and the permanent work restrictions given by his doctor, there are no positions in [the RFPC] plant that [Plaintiff] would be able to perform"; (ii) a disability form completed by Ms. Smith; (iii) two letters from Plaintiff's treating physician, Dr. Faulkenberry, and additional documentation concerning Plaintiff's general physical condition; (iv) a resignation agreement between Plaintiff and his former employer, stating that Plaintiff was resigning "for health reasons and the fact that he is physically unable to return to his regular job with [RFPC] and/or any other job which might be available with [RFPC]"; (v) a copy of Plaintiff's percocet prescription; and (vi) clinic notes from the pain clinic where Plaintiff was treated. (Ex. 4, 52 - 79). In a letter dated November 1, 2007, LINA upheld the prior decision denying benefits. (Ex. 3 at 22). After listing the evidence reviewed by LINA, the letter states: "the medical information available does not support a restriction from light duty occupation." (*Id.* at 23).

In November 2007, Plaintiff was examined by Dr. Ralph Carter of Scotland Orthopedics. On November 5, 2007, Dr. Carter noted Plaintiff's complaints of severe pain in his right knee, and wrote in Plaintiff's medical record: "I believe this gentleman clearly is unemployable in the National Economy, and I do support his application for total disability." (Ex. 4 at 192).

On February 18, 2008, Plaintiff was evaluated for Disability Determination Service by Dr. Ramnik J. Zota. Dr. Zota's assessment was:

-5-

> This is a 53-year old white male here for a Disability evaluation suffering from chronic back problem post surgery, laminectomy, currently degenerative disc disease possible herniation of disc, severe posttraumatic arthritis right knee, anxiety and depression. Based on this evaluation, this impairment affects his sitting. He can sit about 30 minutes 2 to 3 hours per 8-hour period. He can stand for 10-15 minutes time. Walking, less than 2-block. No assisting device used. Problem with bending and lifting no more than 10 pound. No problems to hear, speak, or travel. No problems to carry or handle object.

(Ex. 4 at 220).

On April 15, 2008, Plaintiff submitted another appeal. Documents submitted with the appeal included a declaration from Plaintiff, medical records, statements from two of Plaintiff's treating physicians, the agreement for settlement of his workers' compensation claim, a letter from the Social Security Administration, and a medical evaluation performed by a physician for the Social Security claim. On May 7, 2008, Plaintiff supplemented his appeal with a notice of a favorable decision on his Social Security claim. (Ex. 4 at 271).

On June 11, 2008, LINA notified Plaintiff that his second appeal had been denied. (Ex. 4 at 279-81). The denial letter was signed by Patti Ursiny, Appeals Claim Manager. The letter contained numerous errors, including the wrong name of Plaintiff's employer, the wrong policy number, and a misstatement of Plaintiff's medical condition and impairments.[3] Following receipt of this denial letter, Plaintiff,

---

[3] For example, the denial letter referred to Plaintiff's employer as "Bertelsmann Incorporated," and described his condition as "lumbago, lumbar disc degeneration, scoliosis, soft disc protrusion, osteophytes and facet arthrosis" and referenced "a left above knee amputation." (Ex. 4 at 279-80). None of these references is correct. Defendant, in fact, "does not deny that this letter contained administrative errors, including information

through counsel, contacted LINA and pointed out the inaccuracies in the denial letter. Despite assurances from LINA that it would remedy the errors, no new decision on Plaintiff's appeal was ever issued by LINA. Plaintiff filed this lawsuit on September 19, 2008.

## II. DISCUSSION

Summary judgment is proper only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).

In making a determination on a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Va.*, 67 F.3d 53, 56 (4th Cir. 1995). Mere allegations and denials, however, are

---

from another claimant's file," but asserts that the errors do not establish disability "per se" or that the second appeal was not properly reviewed. (Def.'s Mem. 8).

insufficient to establish a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of that party." *Id.* at 251 (internal quotations and citations omitted). Thus, the moving party can bear its burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish its claim. *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other facts immaterial." *Id.* at 323.

The applicable standard of review of the denial of benefits under an ERISA plan is well settled. Generally, the denial of benefits by a plan administrator is reviewed under a *de novo* standard. *See Woods v. Prud. Ins. Co. of Am.*, 528 F.3d 320, 322 (4th Cir. 2008). Where a plan administrator is granted discretionary authority to determine benefit eligibility or construe the terms of the plan, however, the denial of benefits must be reviewed for abuse of discretion. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989); *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). Under this deferential standard, an administrator's decision will not be disturbed as long as it is reasonable, even if this court would have come to a different independent conclusion. *Ellis*, 126 F.3d at 232. "Such a decision is reasonable if it is 'the result of a deliberate, principled reasoning process

and if it is supported by substantial evidence.'" *Id.* (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)).

The Fourth Circuit has held that an ERISA plan can afford discretion to its administrator in one of two ways. *Woods*, 528 F.3d at 322. First, the plan can confer discretion through language that "expressly creates discretionary authority." *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000). Alternatively, the plan may confer implied discretion where the terms "indicate a clear intention to delegate final authority to determine eligibility to the plan administrator." *Id.* at 523. In either set of circumstances, if the grant of discretion is not clear, the standard of review is *de novo*. *Woods*, 528 F.3d at 322 (citing *Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270 n.6 (4th Cir. 2002)). Because ERISA plans are contracts, they must be interpreted using "established principles of contract and trust law." *Feder*, 228 F.3d at 522. Accordingly, when determining whether a plan confers discretion, the court must construe any ambiguity in the language against the drafter of the plan and in accordance with the reasonable expectations of the insured. *Woods*, 528 F.3d at 322.

The Plan in this case was issued by LINA on January 1, 2005, and was adopted by Wabtec as the long-term disability benefits document. Attached to and accompanying the original insurance policy is an Appointment of Claim Fiduciary (the "ACF"). This document, which was executed on the same day that the insurance policy was issued, reserves for LINA "the authority, in its discretion, to

-9-

Case 1:08-cv-00675-WWD   Document 34   Filed 08/26/09   Page 9 of 14

interpret the terms of the Plan, including the [Insurance] Policies; to decide questions of eligibility for coverage or benefits under the Plan; and to make any related findings of fact." (Def. Ex. 1). In September 2005, Wabtec issued an updated SPD that identifies LINA and summarizes the main plan documents adopted on January 1, 2005: "Wabtec has appointed individuals who are responsible for the plan's day-to-day operation. The plan administrator and those persons acting on behalf of the administrator have full discretionary authority to administer and interpret the plan." (Pl.'s Ex. 2 at 0030-0031).

Defendant asserts that the plan documents here require application of an abuse of discretion standard of review. In his initial brief, Plaintiff agreed that the standard of review should be abuse of discretion. Nevertheless, in his response to Defendant's motion for summary judgment, Plaintiff now contends, based on a recent district court order in the Eastern District of North Carolina, that the standard of review should be *de novo*.[4] Plaintiff argues that the ACF cannot be considered a valid grant of discretionary authority because it is not part of the Plan. This court disagrees. In doing so, I note, and adopt, the reasoning of Judge Flanagan in an even more recent case involving the same plan documents at issue here. In

---

[4] In that case, the purported grant of discretionary authority was found in the SPD, rather than the official plan document, and the SPD stated that the SPD was not a part of the plan and that the plan document itself would control in the event of a discrepancy. Judge Louise Flanagan rejected the insurance company's contention that the standard of review should be abuse of discretion, holding that the grant of discretionary authority cannot be contained in a supplementary document and that therefore the standard of review in that case should be *de novo*. *Soper v. Prudential Ins. Co. of Am.*, No. 5:08-CV-42-FL (E.D.N.C. May 21, 2009).

-10-

*DuPerry v. Life Insurance Co. of North America*, Case No. 5:08-CV-344-FL (E.D.N.C. Aug. 10, 2009), Judge Flanagan ruled that the ACF, identical to the one here, was a valid plan amendment to the Policy and that because the ACF "validly grants discretion to LINA . . . the court must review defendant's denial of long term disability benefits to plaintiff in this case for abuse of discretion." *Id.* at 17. The question of whether a notice denying benefits under an ERISA plan complied with regulatory requirements, however, is generally a question of law subject to *de novo* review. *See Ellis*, 126 F.3d at 234.

The parties have extensively briefed their respective positions on the proper standard of review and the substantive issue as to whether Plaintiff is entitled to disability benefits. Nevertheless, there is a preliminary issue which must be decided and which, in my opinion, requires a remand to the plan administrator.

As noted, Plaintiff appealed the initial denial of benefits. This appeal was denied. At that point, arguably, Plaintiff could have filed his lawsuit. Plaintiff chose instead to submit a second appeal, however, with new supporting documents and statements. Defendant characterizes this second appeal as a "voluntary appeal" because, indeed, it is not required under ERISA. In fact, under ERISA, after the denial of his initial appeal Plaintiff had the option of appealing within 180 days or filing suit. Defendant argues that neither the initial claim denial nor the denial of the first appeal are being challenged by Plaintiff; rather, Defendant asserts, Plaintiff in this lawsuit questions only the treatment of his second appeal. Defendant argues

-11-

that because the second appeal was "voluntary," the admitted procedural error "does not undermine LINA's first and second determinations that Plaintiff was not disabled." I do not agree.

ERISA requires employee benefit plans that deny disability benefits to "set[] forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133. The accompanying regulations further require the plan to describe "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." 29 C.F.R. § 2560.503-1(g)(iii). Once an appeal is filed, the plan administrator must provide a full and fair review, as provided by the statute and regulations. *Id.* § 2560.503-1(j). These rules are "designed both to allow the claimant to address the determinative issues on appeal and to ensure meaningful review of the denial." *Love v. Nat'l City Corp. Welfare Benefits Plan*, No. 08-1722, 2009 WL 2178667, at *3 (7th Cir. July 23, 2009). Here, the letter denying Plaintiff's second appeal clearly, and admittedly, contains egregious errors and is deficient in providing a basis for denial of the appeal. It is not clear in any way, from this letter, that Plaintiff's appeal received a meaningful and reasoned consideration, given that the letter references another claimant entirely. While it is true that Plaintiff's second appeal was "voluntary" under ERISA, it does not necessarily follow that the plan administrator could ignore the appeal or not afford it a full and fair review. *See* 29 U.S.C. § 1133(2) (mandating that every ERISA plan "afford a reasonable opportunity

-12-

Case 1:08-cv-00675-WWD   Document 34   Filed 08/26/09   Page 12 of 14

to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim"). Moreover, when Defendant was notified of the errors in the second appeal denial letter, it did not correct the errors or issue a new letter nor offer any explanation to Plaintiff.

I conclude that Defendant failed to provide a full and fair review of Plaintiff's appeal of the denial of disability benefits. Plaintiff contends that the proper remedy would be for this court to award benefits. I decline to do so, however, despite some doubts about the reasonableness of Defendant's denial. Given the clear errors in the handling of the second appeal, however, the better course of action is to remand the action to the plan administrator for further findings or explanations. *See Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 240 (4th Cir. 2008) (stating that in cases involving procedural ERISA violations, the proper remedy is to remand to plan administrator for the "full and fair review" to which claimant is entitled). On remand, Defendant should conduct a full inquiry into whether Plaintiff meets the Plan's definition of "disabled," both in terms of short-term and long-term disability. If it concludes that Plaintiff does not meet that definition, it must adequately explain the reasons supporting its decision.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (docket no. 17) is **DENIED**, Defendant's Motion for Summary Judgment (docket no. 22) is **DENIED**, and the matter is **REMANDED** to the Plan Administrator for a full and fair

-13-

review of Plaintiff's claim.[5]  A judgment conforming to this order will be entered simultaneously herewith.

_____
WALLACE W. DIXON
United States Magistrate Judge

Durham, NC
August 26, 2009

---

[5] Because neither party has prevailed at this point of the proceedings, the court declines to award attorneys' fees.  *See* 29 U.S.C. § 1132(g)(1); *see also Martin v. Blue Cross & Blue Shield of Va., Inc.*, 115 F.3d 1201, 1210 (4th Cir. 1997) "[O]nly a prevailing party is entitled to consideration for attorneys' fees in an ERISA action."); *Hardt v. Reliance Standard Life Ins. Co.*, No. 08-1896, 2009 WL 2038759 at *3-4 (4th Cir. July 14, 2009) (where plaintiff's only request for relief was the award of benefits, and court instead remanded the case, plaintiff did not qualify as a prevailing party for purposes of an award of attorneys' fees).

-14-